NOT DESIGNATED FOR PUBLICATION

No. 116,694

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RONALD AARON GOODWIN,
*Appellant*,

v.

STEVE HULL,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Opinion filed September 15, 2017. Affirmed.

*Morgan B. Koon*, of Koon Law Firm, LLC, of Wichita, for appellant.

*Joseph H. Cassell*, of Eron Law, P.A., of Wichita, for appellee.

Before MALONE, P.J., PIERRON and BRUNS, JJ.

PER CURIAM: This case arises from Ronald Goodwin's attempt to purchase property from Steve Hull located at 5730 West Central, Wichita, Kansas. The parties initially entered into an installment contract for Goodwin to purchase the property from Hull, but the parties later agreed to cancel the purchase contract and instead entered into a lease agreement with an option to purchase. Goodwin attempted to exercise his purchase option and filed this lawsuit for the district court to settle the correct purchase price under the option. The district court granted partial summary judgment in favor of Hull. At a bench trial on stipulated facts, the district court agreed with Hull's interpretation of the

1

purchase option. Goodwin appeals from the district court's adverse rulings. For the reasons stated herein, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 2010, Goodwin and Hull entered into a contract for Goodwin to purchase property from Hull located at 5730 West Central, Wichita, Kansas, for $330,000 in installment payments. On November 1, 2012, the parties agreed to cancel the purchase contract and instead entered into a lease agreement for the subject property with monthly lease payments of $2,415.55.

An option to purchase the property was included in the lease agreement. The option provided for a $250,000 purchase price and stated that Goodwin would "be credited, at closing, with such amounts of the lease payment as provided in the attached amortization[] schedule based on a 20 year ARM at 10% interest." Under the lease agreement, the previous contract to purchase the property was "declared null and void."

On April 20, 2015, Goodwin notified Hull of his intent to exercise his purchase option. Hull gave Goodwin an extension on the due date of his lease payment while both parties negotiated on the correct balance of the purchase price under the option.

On May 8, 2015, Goodwin filed this action for the district court to settle the correct purchase price under the option. Goodwin alleged the agreed $250,000 purchase price in the option agreement was a $19,086.03 increase from the remaining balance of the prior purchase contract when the parties entered into the lease. Goodwin also alleged there was an ambiguity as to the amortization schedule and its application to lease payments. He claimed the "total payment" in the amortization schedule was the "lease payment" as outlined in the purchase option under the lease. Goodwin was effectively claiming that he should be credited for full lease payments and not just the principal of

2

such payments as outlined in the amortization schedule. Subtracting the full amount of his previous lease payments totaling $69,120.17, $5,000 paid in consideration of the purchase option, and the alleged $19,086.03 price increase, Goodwin asked the district court to settle the property's purchase price at $156,793.80. Goodwin claimed that failure to do so would result in unjust enrichment, that Hull was committing "intentional fraud," and that he had suffered $100,000 in damages from "the loss of value of the property."

Hull filed his answer on July 20, 2015. On August 10, 2015, Hull filed a motion for summary judgment with an extensive memorandum in support of the motion. Hull claimed the purchase option was unambiguous. He argued that "the parol evidence rule in combination with the contract's integration clause" barred Goodwin from introducing evidence of prior agreements. He also argued that Goodwin's acknowledgement "of a written contract" prevented him from demonstrating "a cognizable claim for unjust enrichment." Hull contended that Goodwin failed to establish fraud and was not entitled to damages because he was "the sole breaching party." Lastly, Hull claimed Goodwin's failure to make payments under the lease was a material breach capable of terminating the purchase option, and Hull was "entitled to costs and attorney fees."

On August 31, 2015, Goodwin filed his response in opposition to Hull's motion for summary judgment, contesting nearly all of Hull's summary judgment arguments. On September 18, 2015, Hull filed a reply to Goodwin's response.

The district court held a hearing on the summary judgment motion on October 1, 2015. After hearing arguments of counsel, the district court partially granted Hull's motion for summary judgment. Specifically, the district court granted partial summary judgment in Hull's favor on Goodwin's claim for a $19,086.03 offset from the purchase price, reasoning that the lease agreement made no reference to $19,086.03 being credited to Goodwin at the time he exercised his rights under the purchase option. The district court also ruled that the uncontroverted facts established that the prior installment

3

contract was "null and void." However, the district court found there was ambiguity as to the meaning of the term "lease payment" under the purchase option as it related to the amortization schedule and whether the total lease payments and not just the principal of such payments should be applied to the purchase price under the option agreement.

On July 19, 2016, the district court held a bench trial based on the facts deemed to be uncontroverted in the summary judgment pleadings. The uncontroverted facts were as follows:

"1. Defendant Steve Hull is a resident of Sedgwick County, Kansas. [].

"2. Plaintiff Ronald Aaron Goodwin is a resident of Sedgewick County, Kansas. [].

"3. On September 3, 2010, the parties entered into an Installment Contract for Deed and Escrow Contract ('Installment Contract'), wherein plaintiff would purchase The South 213 Feet of Lot 9 Sunnyside Garden 3rd Addition ('Property') commonly referred to as 5730 West Central, Wichita, Kansas 67212, from the defendant for a purchase price of $330,000.00 for a period of 2 years commencing on the 1st Day of October, 2010. [].

"4. Contemporaneous with the Installment Agreement an Affidavit of Equitable Interest was signed on September 3, 2010, and recorded with Sedgwick County Register of Deeds on October 10, 2010. [].

. . . .

"8. On November 1, 2012, the parties entered into a Lease Agreement and Options to Purchase Agreement ('Lease Agreement' or 'Option Agreement') for a term of years beginning on December 1, 2012 and ending on November 30, 2015, wherein Plaintiff agreed to lease the Property from Defendant at a monthly rent in the amount of $2415.55, and gave the plaintiff an exclusive option to purchase the property anytime between November 2012 and October 31, 2015. [].

"9. All agreements prior to the Lease Agreement and Option Agreement entered into by the parties were declared null and void. [].

"10. The Option Agreement constitutes the final and entire agreement between the parties and no further promise of any kind were made nor did they reach any other understanding, either oral or written. [].

4

"11. On May 3, 2013, a Quit Claim Deed was recorded with the Sedgwick County Register of Deeds, wherein Plaintiff and his wife, Michelle Goodwin, and Stoney Mott and his wife, Karen Mott, conveyed and quitclaimed the Property to Defendant and extinguished any interest they may have under the Installment Contract as evidenced by the Affidavit of Equitable Interest and Contract for Deed, declaring all those contract terminated and no longer valid. [].

. . . .

"14. Plaintiff, by letter from counsel, on April 20, 2015, notified defendant of his intent to purchase the property for $188,123.48. [].

. . . .

"16. On April 30, 2015, Defendant agreed to an extension of the payment of rent due for May 1, 2015, for the parties to negotiate in good faith through May 15, 2015. [].

. . . .

"18. Plaintiff admits that the Lease Agreement provides for late fees to be assessed by defendant for late payments. [].

"19. Plaintiff admits that the price for the Property under the Option Agreement is $250,000.00. [].

. . . .

"22. Plaintiff admits he does not want to continue paying rent and should not be required to pay late fees and interest associated with the late fees. [].

"23. Plaintiff admits that this action is for relief for breach of the Lease Agreement and Option Agreement. []."

In addition to the uncontroverted facts, the parties stipulated to certain exhibits at the bench trial. Both sides presented oral arguments at the hearing, and the district court reserved its decision for a later date.

The district court's judgment was filed on September 8, 2016. The district court found that only the principal of lease payments could be credited towards the purchase price under the option agreement. As such, the district court set the unpaid balance of the purchase price at $239,250.47 as of April 2015. The district court also awarded a money judgment in favor of Hull against Goodwin for $50,226 representing unpaid lease

5

payments and other expenses Goodwin failed to pay while the case was pending. The district court ordered that if Goodwin did not pay Hull $239,250.47 plus $50,226 by September 18, 2016, Goodwin must vacate the property. Finally, pursuant to the lease agreement, the district court found that the prevailing party, Hull, was entitled to attorney fees. Attorney fees were later determined to be $23,683, and an order for such amount was filed on September 15, 2016.

Goodwin timely filed a notice of appeal, but he failed to post a supersedeas bond to stay execution of the judgment. Hull subsequently executed on the judgment by taking possession of the property and by selling Goodwin's purchase option at a public sale on January 23, 2017. Hull purchased the option for $1,000 at the sale. The execution sale was confirmed by the district court on February 3, 2017.

ANALYSIS

On appeal, Goodwin contends the district court erred in granting partial summary judgment when it found that the lease was ambiguous, the prior purchase contract was null and void, and Goodwin "was not entitled to the $19,086.03" offset on the purchase price under the option agreement. Goodwin claims parol evidence was necessary to figure out the meaning of the term "lease payment" as used in the purchase option under the lease, and the district court's partial summary judgment ruling effectively prevented him from presenting parol evidence at the bench trial to establish the correct purchase price under the option. Finally, Goodwin claims the district court erred when it ruled in Hull's favor on all counts at the bench trial contrary to established precedent.

Hull contends this appeal is moot because the relief Goodwin seeks is not available as the purchase option was sold as part of the execution of the judgment. Hull notes that Goodwin never filed a supersedeas bond to prevent execution of the judgment.

6

On the merits, Hull argues that the district court correctly determined the option price based on the stipulated evidence presented at the bench trial.

Goodwin filed a reply brief contending that this appeal is not moot. He cites caselaw indicating that the mere failure to post a supersedeas bond is not acquiescence to a judgment. Goodwin advocates that if the appeal is determined to be moot, the issue "is one capable of repetition and one of public importance."

*Is this appeal moot?*

As a general rule, Kansas appellate courts do not decide moot questions or render advisory opinions. The mootness doctrine is one of court policy, which recognizes that the role of the court is to "'determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.' [Citations omitted.]" *Stano v. Pryor*, 52 Kan. App. 2d 679, 682-83, 372 P.3d 427 (2016) (quoting *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 [2012]). The mootness test has been described as a determination whether "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.' [Citation omitted.]" *Wiechman v. Huddleston*, 304 Kan. 80, 84, 370 P.3d 1194 (2016).

An exception to the general rule relating to mootness is recognized when the case involves a question of public interest even though the case has become moot as to the present parties. "Public importance means more than that certain members of the general public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct. [Citation omitted.]" *State v. Hayden*, 52 Kan. App. 2d 202, 206, 364 P.3d 962 (2015).

Because mootness is a doctrine of court policy, which was developed through court precedent, appellate review of the issue is unlimited. *Hilton*, 295 Kan. at 849.

We agree with Hull that Goodwin's appeal is moot as to issues concerning the purchase option. Goodwin filed this lawsuit primarily for the district court to settle the correct purchase price under the option agreement. After the bench trial on stipulated facts, the district court set the purchase price under the option at $239,250.47. The district court also awarded a money judgment in favor of Hull against Goodwin for $50,226 representing unpaid lease payments and other expenses Goodwin failed to pay while the case was pending. The district court later awarded Hull attorney fees in the amount of $23,683. Goodwin failed to post a supersedeas bond to stay the execution of the judgment. Hull executed on the judgment by taking possession of the property and selling Goodwin's purchase option at a public sale which was confirmed by the district court.

Goodwin is correct that the mere failure to post a supersedeas bond is not acquiescence to a judgment. But in this case, even if we were to reverse the district court's ruling on the correct purchase price under the option agreement, Goodwin no longer has any legal right to enforce his option. The case is moot as to issues concerning the purchase option because the option has been extinguished as a matter of law. We disagree with Goodwin that the issue is one of public importance.

However, the appeal is not moot as to the money judgment and attorney fees awarded in favor of Hull against Goodwin. Although Goodwin does not contest the amount of the money judgment and attorney fees, he challenges the propriety of the judgment itself as not being supported by the evidence. The money judgment and award of attorney fees represents an actual controversy between the parties, as opposed to a hypothetical one. Thus, we will review the merits of Goodwin's claims on appeal.

*Partial summary judgment ruling*

Goodwin contends the district court erred in granting partial summary judgment when it found that the lease was ambiguous, the prior purchase contract was null and void, and Goodwin was not entitled to the $19,086.03 offset on the purchase price under the option agreement. Goodwin maintains the district court's ruling on the summary judgment motion effectively prevented him from presenting parol evidence at the bench trial that was necessary to figure out the meaning of the term "lease payment" as used in the purchase option under the lease agreement.

Hull contends this issue is not preserved for appeal. He notes that the issue was not part of the pretrial order, nor was it brought up at trial.

> "'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.' [Citation omitted.]" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

It was always Goodwin's position in district court that the lease agreement was ambiguous as to the meaning of the term "lease payment" under the purchase option. He argues on appeal that the district court erred when it found that the uncontroverted facts established that the prior installment contract was null and void. However, Hull's memorandum in support of his motion for summary judgment alleged the following

9

uncontroverted fact: "9. All agreements prior to the Lease Agreement and Option Agreement entered into by the parties were declared null and void. (Option Agreement ¶ 12)." In his response to the summary judgment motion, Goodwin indicated the alleged fact was "uncontroverted." Thus, the district court did not err in making this finding.

The district court went on to find that the lease agreement made no reference to $19,086.03 being credited to Goodwin at the time he exercised his rights under the purchase option. This fact is apparent from the plain language of the written lease agreement. A party must come forward with something of evidentiary value to establish a material dispute of fact in order to oppose a motion for summary judgment. *U.S. Bank NA v. McConnell*, 48 Kan. App. 2d 892, 903, 305 P.3d 1 (2013). Here, the district court did not err in finding that there were no material disputed facts as to Goodwin's claim for a $19,086.03 credit on the purchase price under the option agreement, and the district court did not err in granting partial summary judgment on this claim.

*Bench trial on stipulated facts*

Goodwin contends "[t]he district court erred when it ruled in [Hull's] favor on all counts." Specifically, Goodwin claims the language in the purchase option was ambiguous as to the meaning of the term "lease payment," and the purchase option should have been construed to allow him to receive credit towards the purchase price for the full amount of the lease payments and not just the principal amount as outlined in the amortization schedule. In this regard, Goodwin argues that an ambiguous contract "must be construed against the drafter."

Hull contends that the option price was correctly determined by the district court. He maintains that Goodwin had the burden of proof at trial and failed to meet this burden. Hull claims that Goodwin's argument is not supported by the facts of the case or the law.

10

When a verdict or trial court decision is challenged for insufficiency of evidence or as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the verdict will not be disturbed on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011).

Where the controlling facts are based on written or documentary evidence from pleadings, admissions, depositions, and stipulations, an appellate court is in as good a position as the trial court to examine and consider the evidence and to determine what the facts establish as a matter of law. *Weber v. Board of Marshall County Comm'rs*, 289 Kan. 1166, 1175-76, 221 P.3d 1094 (2009). Moreover, the appellate court exercises unlimited review over the interpretation and legal effect of written instruments and the appellate court is not bound by the lower court's interpretation of those instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

> "'An interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided.' [Citations omitted.]" *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

Here, the option stated that Goodwin would "be credited, at closing, with such amounts of the lease payment as provided in the attached amortization[] schedule based on a 20 year ARM at 10% interest." However, the amortization schedule only contained the terms "interest," "principal," and "balance." Further, the lease called for "monthly rent of $2,415.55," not monthly "lease payments." These differences combined to form the ambiguity recognized by the district court. Goodwin explains this ambiguity by claiming he should have received full credit for all lease payments towards the purchase price when he exercised the option and not just the principal amount of the lease payments.

11

However, there is evidence in the record to support the district court's finding that only the principal of the lease payments could be credited toward the cost of purchasing the property. Hull's deposition testimony admitted as Exhibit 5 indicated that it was always his position that Goodwin should be credited only for the principal as listed on the amortization schedule and not the interest. E-mails between the parties introduced as Exhibit 3 reflect that Hull's position on this issue was communicated to Goodwin. More importantly, as Hull points out, there would be no reason to have an amortization chart tracking monthly payments of principal and interest if all such payments went to the purchase price. The district court's construction of the purchase option under the lease agreement was the most reasonable interpretation of the documents submitted as evidence. Moreover, the district court's finding that the unpaid balance of the purchase price was $239,250.47 as of April 2015 came directly from the amortization schedule attached to the lease agreement. Thus, the district court's determination of the correct balance of the purchase price under the option agreement was supported by the evidence.

The district court also awarded a money judgment in favor of Hull against Goodwin for $50,226 representing unpaid lease payments and other expenses Goodwin failed to pay while the case was pending. At oral argument before this court, counsel indicated that this amount was stipulated to by the parties in district court. However, our review of the record indicates that the parties stipulated at the bench trial to an amount of $46,898.34. In any event, Goodwin does not challenge on appeal the amount of the money judgment awarded by the district court. Likewise, he does not challenge the amount of the attorney fees. We find no reason to disturb the district court's judgment.

Affirmed.

12